IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| David Dwight Smith, ) | |
| ) | Civil Action No. 6:05-2497-GRA-WMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Larry Powers, Warden of ) | |
| Spartanburg County Detention Center, ) | |
| ) | |
| Defendant. ) | |
| ) | |

      The plaintiff, a state prisoner proceeding *pro se*, seeks relief pursuant to Title 42, United States Code, Section 1983.

      Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under Title 42, United States Code, Section 1983, and submit findings and recommendations to the District Court.

      This matter is before the court on the defendant's motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. In his complaint, the plaintiff, who is proceeding *pro se*, alleges civil rights violations while he was held at the Spartanburg County Detention Facility ("SCDF").[1] The plaintiff named Larry Powers, the Warden of SCDF, as the only defendant.

      The plaintiff filed his complaint on August 29, 2005, alleging that the defendant violated his constitutional rights. On November 23, 2005, the defendant filed a motion for summary judgment. By order filed November 28, 2005, pursuant to *Roseboro*

---

[1] The plaintiff is now an inmate at McCormick Correctional Institution.

*v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. The plaintiff filed his response to the defendant's motion on February 28, 2006.

## **FACTS PRESENTED**

The plaintiff was convicted of murder in 1997 in Spartanburg County, and he was sentenced to life in prison. In 2003, his application for post-conviction relief was granted and his convictions were reversed and remanded to the Court of General Sessions for Spartanburg County. An officer of the SCDF took custody of the plaintiff on December 21, 2004, and the SCDF then transferred custody of the plaintiff to the Cherokee County Detention Facility for disposition of certain charges. However, the SCDF did not put a hold on the plaintiff or notify the other facility that the plaintiff had a pending murder charge. The plaintiff was released from custody after disposition of the Cherokee County charges (def. m.s.j., Powers aff., ex. B). The plaintiff was later picked up in Texas and brought back to the SCDF on or about June 16, 2005 (Powers aff. ¶ 4, comp. ¶ 2).

In his complaint, the plaintiff alleges that while at the SCDF he has "been housed in administrative segregation . . . in a cell with and pod with smokers." He also complains that he has not "received adequate medical care." Specifically, he claims he did not receive certain medications for almost 10 days and that his medications were changed. He further claims that he was denied a special diet and adequate exercise and has "not been able to utilize a law library" (comp. ¶ 2).

In support of his motion for summary judgment, the defendant submitted his affidavit outlining the SCDF policies concerning Classification and Housing Assignments. Under those polices, smoking is permitted only in the outside exercise area. Accordingly, the plaintiff was not subjected to smoke within the housing area. Further, to Powers' knowledge, the plaintiff never requested to be moved away from smokers. Powers further

testified that the plaintiff's maximum security housing assignment was based on the fact that he was charged with a serious crime, murder, and that he was incorrectly released from jail.  Further, even in segregation, inmates have approximately one hour daily outside of their cells and are allowed to exercise within their cells (Powers aff. ¶ 4, ex. A, B).

The defendant also submitted the affidavit of Judy Collins, the Nursing Supervisor at the SCDF, in support of his motion for summary judgment.  Collins testified that the plaintiff was seen on numerous occasions by the SCDF physician and nursing staff, not only when he made medical complaints but also routinely to monitor his heart because of his past history of bypass and heart catheterization.  According to the plaintiff's medical records, he was evaluated by the SCDF staff physician upon his admission, and the physician ordered medical and laboratory tests to evaluate the plaintiff's health, which were performed on June 18, 2005.  According to Collins, no medications accompanied the plaintiff when he arrived at the SCDF.  After examination, the doctor prescribed several medications to the plaintiff, which were administered to him beginning June 17, 2005, the day after he arrived at the SCDF.  While the plaintiff claims that one of his medications, Ducosate, was discontinued, his medical records show that he received this medication on July 15 and 16, 2005.  Additionally, Colace was substituted for Ducosate on occasion and on an as-needed basis.  Further, the plaintiff also received medical attention for his ears and skin.  His medical records show that on June 27, 2005, when he complained of ear problems, the plaintiff was evaluated by a nurse and received medical treatment.  When he complained about a rash on September 2, 2005, he received skin cream to alleviate the condition (Collins aff. ¶¶ 5-6, ex. A).

The plaintiff does not specify what type of special diet he is not receiving. Collins testified that the menu for the SCDF is prepared by a dietician and meets the recommendations of the Food Guide Pyramid (Collins aff. ¶ 8).  Powers testified that to his knowledge the plaintiff had never requested a "special diet."  Further, the defendant

3

submitted canteen records showing that the plaintiff was a consistent purchaser of chocolate bars, chips, cheeseburgers, and pastries (Powers aff. ¶ 6, ex. E).

Powers testified that while the SCDF did not have the resources to maintain an extensive law library, the plaintiff could still receive legal documents from his attorney. When the plaintiff submitted two grievances for legal materials, the SCDF forwarded those grievances to the plaintiff's attorney.  Also, when the plaintiff requested copies and writing materials to prepare legal documents, he received those items.  To Powers' knowledge, the plaintiff never complained that he had missed any filing deadlines (Powers aff. ¶ 6, ex. C, D).

## APPLICABLE LAW AND ANALYSIS

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law.  As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  In determining whether a genuine issue has been raised, the court must construe all inferences and

ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

The plaintiff alleges that the defendants were deliberately indifferent to his serious medical needs. "The Fourteenth Amendment right of pretrial detainees, like the Eighth Amendment right of convicted prisoners, requires that government officials not be deliberately indifferent to any serious medical needs of the detainee." *Belcher v. Oliver*, 898 F.2d 32, 34 (4th Cir. 1990) (citing *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988)).

The government is "obligat[ed] to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble,* 429 U.S. 97, 102 (1976). This obligation arises from an inmate's complete dependency upon prison medical staff to provide

5

essential medical services. *Id.* The duty to attend to prisoners' medical needs, however, does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. Instead, it is only when prison officials have exhibited "deliberate indifference" to a prisoner's "serious medical needs" that the Eighth Amendment is offended. *Id.* at 104. As such, "an inadvertent failure to provide adequate medical care" will not comprise an Eighth Amendment breach. *Id.* at 105-106.

In order to state a claim, "[a] plaintiff must satisfy two elements . . . : he must show a serious medical need and he must prove the defendant's purposeful indifference thereto." *Sires v. Berman*, 834 F.2d 9, 12 (1st Cir. 1987). A medical need is "serious" if "it is diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990), *cert. denied,* 500 U.S. 956 (1991). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id.* Moreover, disagreements between an inmate and a physician over the inmate's proper medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985).

Even assuming that the plaintiff has shown that he had a serious medical need, he has failed to show that the defendant was deliberately indifferent to his need. The affidavits and medical records submitted by the defendant show that the plaintiff received prompt medical attention from the SCDF medical staff and physician. While the plaintiff claims he was not given his medications in full, he has failed to specify what medications were not received. Further, the plaintiff has not demonstrated that he suffered any injury

or threat of a serious injury from the alleged refusal of medical attention. Accordingly, his claim fails.

A cause of action may be stated under the Eighth Amendment for exposure to environmental tobacco smoke ("ETS") only if the detainee establishes that the defendant has, with deliberate indifference, exposed him involuntarily to such levels of ETS to create an unreasonable risk of serious damage to his future health. *Helling v. McKinney*, 509 U.S. 25, 35-36 (1993). The plaintiff has presented absolutely no evidence that he has been involuntarily exposed to ETS. As set forth above, the SCDF permits smoking only in the outside exercise area. Accordingly, the plaintiff was not subjected to smoke within the housing area, even if he was, as he claims, "housed in administrative segregation . . . in a cell with . . . smokers." Accordingly, the facts do not remotely establish that the plaintiff faces an unreasonable risk of serious damage to his future health, much less that the defendant was deliberately indifferent to such health risk. Further, as argued by the defendant, the plaintiff has never requested that he be moved away from smokers, nor has he made any claims of injury resulting from his housing assignment.

The plaintiff's claim that he did not receive a "special diet" while detained at the SCDF also fails. The evidence shows that the SCDF's menu meets the recommendations fo the Food Guide Pyramid. The plaintiff has failed to state what kind of special diet he did not receive. Further, the records from the canteen at the SCDF show that the plaintiff was a consistent purchaser of chocolate bars, chips, cheeseburgers, and pastries. Based upon the foregoing, the plaintiff's claim is meritless.

The plaintiff also attempts to allege a violation of the prohibition against cruel and unusual punishment by claiming that the defendant afforded him inadequate exercise time and kept him in administrative segregation. Confinement conditions of pretrial detainees are to be evaluated under the Due Process Clause of the Fourteenth Amendment rather than under the Eighth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535

7

(1979). Where a pretrial detainee complains of prison conditions, the proper inquiry is whether the conditions of his confinement amount to punishment before a proper adjudication of guilt. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Not every hardship suffered during pretrial detention amounts to "punishment" in the constitutional sense. *Id.* (citing *Bell,* 441 U.S. at 53). To succeed on a claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

The plaintiff has failed to show either element of a conditions of confinement claim. The defendant has presented evidence that the plaintiff's maximum security housing assignment was based on the fact that he was charged with a serious crime, murder, and that when he was incorrectly released from jail he fled from South Carolina to Texas. Further, inmates in segregation have approximately one hour daily outside of their cells and are allowed to exercise within their cells. Based upon the foregoing, the claim fails.

Lastly, the plaintiff alleges that he was deprived of access to the courts while detained in the SCDF. The United States Constitution guarantees prisoners the right of meaningful access to the courts. *Bounds v. Smith*, 430 U.S. 817, 824, 828 (1977). In *Bounds*, the Supreme Court held that the right of access imposes an affirmative duty on prison officials to assist inmates in preparing and filing legal papers, either by establishing an adequate law library or by providing adequate assistance from persons trained in the

law. *Id*. at 828.  Prison officials are not required to provide both, as long as access to either the library or the trained personnel is "meaningful."  *Id*. at 832.

In *Lewis v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court held that a prisoner must show some actual injury resulting from a denial of access in order to allege a constitutional violation.  In *Cruz v. Hauck*, 515 F.2d 322 (5th Cir. 1975), the court noted that "access to the courts may be satisfied either by availability of legal materials, by counsel, or by any other appropriate devise of the State."  *Id.* at 331.  Here, the evidence shows that the plaintiff had the assistance of counsel.  He submitted two grievances for legal materials, which the SCDF forwarded to his counsel.  Further, when he requested writing materials and copies of legal materials, they were provided.  The plaintiff has not identified a specific problem he wished to research nor has he stated a specific injury resulting from his alleged denial of access to the courts.  Based upon the foregoing, the claim is meritless.

The defendant further claims that he is entitled to qualified immunity.  This court agrees.  Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendants' position would have known of it.  *Id.*

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000).

Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998).

In this case, as set forth above, the plaintiff has failed to demonstrate that the actions of the defendant violated any of his constitutional rights. Therefore, the defendant is entitled to qualified immunity on these claims.

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, it is recommended that the defendant's motion for summary judgment be granted.

WILLIAM M. CATOE
UNITED STATES MAGISTRATE JUDGE

April 27, 2006

Greenville, South Carolina